IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

HAROLD PRITCHARD; OWEN DAVIS;
RYLAN JOHNSON; THOMAS WILLIAMS;
ANTHONY WEINGARD; SEAN THACKER;
RUSH DIALS; JOSEPH WHITLOW; on their
own behalf, and on behalf of all others similarly
situated,

                Plaintiffs,                    Civil Action No. <u>1:25-cv-00136</u>

      v.

THE COUNTY COMMISION OF MCDOWELL
COUNTY; CECIL PATTERSON, individually
and in his capacity as a McDowell County
Commissioner; MICHAEL BROOKS, Individually
and in his capacity as a McDowell County
Commissioner; DEWAYNE DODSON, Individually
and in his capacity as a McDowell County Commissioner;
WILLIAM K. MARSHALL, III, Individually and in his
capacity as Commissioner of the West Virginia Division
of Corrections and Rehabilitation; BETSY JIVIDEN,
Individually as a Former Employee of the West Virginia
Division of Corrections and Rehabilitation; Charles Gore,
Individually and in official his capacity as Superintendent
of McDowell County Corrections and Stevens Correctional
Center; RANDALL MUTTER, Individually as a Former
Employee of The County Commission of McDowell County;
WEXFORD HEALTH SOURCES, INC.; MARY STONE;
DANIEL CONN; ELAINE GEDMAN; JOHN FROELICH;
ARAMARK CORRECTIONAL SERVICES, LLC; UNION
SUPPLY GROUP; JOHN/JANE DOE, NOS. 1-10;
DEFENDANTS JOHN/JANE DOE ARAMARK EMPLOYEES;
DEFENDANTS JOHN/JANE DOE UNION SUPPLY GROUP, INC.
EMPLOYEESAND, JOHN AND JANE DOE WEXFORD EMPLOYEES.

                Defendants.

## CLASS ACTION COMPLAINT

      COME NOW Plaintiffs, by undersigned counsel, and bring this Class Action Complaint

on behalf of themselves and all others similarly situated.  This Complaint arises from a long-

tenured history of inmates at McDowell County Corrections and Stevens Correctional Center being subjected to unconstitutional conditions of confinement and inadequate medical care. For decades, inmates incarcerated at these McDowell County facilities have been subjected to well-known and systematic overcrowding, correctional understaffing, deferred maintenance, medical understaffing, medical neglect, and deliberate indifference to their serious medical needs. The McDowell County Commission has turned a blind eye to these inmates living in unconstitutional conditions and receiving insufficient and inadequate nutrition and basic necessities for years.

Wexford Health Sources, Inc. has continuously chosen to contract with the state and then, in violation of that contract, operate with inadequate, undertrained, and unqualified staff. Further, these defendants have knowingly created a system which results in failure to respond to nurse sick calls timely, if at all, and a gross number of overdue tasks ranging from histories and physicals to labs to EKGs. The actions and inactions of all Defendants are carried out systemically and represent both deliberate indifference and/or medical negligence. Plaintiffs, and all inmates, suffer serious harm and/or the risk of serious harm because of Wexford Heath Sources, Inc.'s decision to carry out their obligations in a manner which shows their deliberate indifference for Plaintiffs.

These allegations are outlined more fully herein.

<u>**JURISDICTION AND VENUE**</u>

1.      This action arises under the Civil Rights Act, 42 U.S.C. § 1983, et seq., and ancillary state law claims.

2.      Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.      Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims.

5.     Venue is proper because certain Defendants reside within the Southern District of West Virginia, Beckley Division and the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Beckley Division.

## PARTIES

6.      Plaintiff Harold Pritchard was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately October 6, 2017.

7.     Plaintiff Owen Davis was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately April 5, 2017.

8.     Plaintiff Rylan Johnson was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately February 15, 2022.

9.     Plaintiff Thomas Williams was an inmate during the time periods identified herein, specifically becoming incarcerated in 2013.

10.     Plaintiff Anthony Paul Jacob Weingard was an inmate during the time periods identified herein, specifically becoming incarcerated in 2013.

11.     Plaintiff Nestor Darby was an inmate during the time periods identified herein, specifically becoming incarcerated on September 18, 2024.

12.     Plaintiff Sean Thacker was an inmate during the time periods identified herein, specifically becoming incarcerated approximately August 2018.

13.     Plaintiff Rush Bryant Dials was an inmate during the time periods identified herein, specifically becoming incarcerated approximately June 14, 2020.

14.    Plaintiff Joseph Whitlow was an inmate during the time periods identified herein, specifically becoming incarcerated approximately February 1, 2020 to March 1, 2020 and May 24, 2022 to June 28, 2022.

15.    During the time these Plaintiffs were incarcerated at the Facilities, they were patients of Wexford as set forth more fully herein.

16.    Each Plaintiff brings this action on behalf of themselves and others similarly situated.

17.    Defendant William Marshall, III (hereinafter "Commissioner Marshall") was at all times relevant hereto an employee of the West Virginia Division of Corrections and Rehabilitation (hereinafter "WVDOCR") and was at all times relevant hereto acting within the scope of his employment and under color of law as the Commissioner of the WVDOCR. He was appointed Commissioner on or about January 18, 2023.

18.    Defendant Betsy Jividen (hereinafter "Former Commissioner Jividen") was an employee of the WVDOCR from January 8, 2018, until she was forced to resign on August 5, 2022, and was at all times relevant hereto acting within the scope of her employment and under color of law as the Commissioner of the WVDOCR.

19.    Commissioner Marshall and Former Commissioner Jividen are collectively referred to as "WVDOCR Commissioners" herein.

20.    The WVDOCR is the administrative division of the West Virginia Department of Military Affairs and Public Safety tasked with administering and exercising direct and effective control over prisons and jails in West Virginia.

21.    The WVDOCR Commissioners are vested with executive authority and responsibility for the administration, operation, and control of all WVDOCR facilities and

employees of WVDOCR facilities. The WVDOCR Commissioners' duties include establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals incarcerated in West Virginia jails, includes inmates in McDowell County Corrections and Stevens Correctional Center (collectively "Facilities").

22.     Among other things, the WVDOCR Commissioners are charged with ensuring that inmates are subjected to appropriate and humane conditions of confinement while housed in any West Virginia jail, including the Facilities. The WVDOCR Commissioners are similarly charged with maintaining and operating the jail facilities in West Virginia in a manner that meets the minimal civilized measure of life's necessities, by providing, inter alia, beds and bedding for all inmates, appropriate food and access to drinking water, access to basic hygiene products, toilets, showers, and laundry, and providing living conditions free of mold, sink and toilet water, human waste or sewage, rats, insects, and other contaminants for all inmates housed therein.

23.     The WVDOCR Commissioners are vested with executive authority and responsibility for the administration, operation, and control of all WVDOCR facilities and employees of WVDOCR facilities. The WVDOCR Commissioner's duties include establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals in the custody of the WVDOCR, including those at the Facilities. See W. Va. Code § 15A-3-4; W. Va. Code § 15A-3-5; W. Va. Code § 15A-3-12; W. Va. Code § 15A-3-12(f).

24.     Among other things, the WVDCOR Commissioners are charged with ensuring that inmates housed in any West Virginia jail, including the Facilities, received constitutionally adequate medical care and medical care that met the standard of care while incarcerated.

25.    Among other things, the WVDOCR Commissioners are charged with ensuring that inmates housed in any West Virginia jail were adequately protected.

26.    Among other things, the WVDOCR Commissioners are charged with ensuring that inmates housed in any West Virginia jail, including the Facilities, were subject to humane conditions of confinement.

27.    Likewise, the WVDOCR Commissioners are tasked by law with ensuring that jail facilities in West Virginia, including the Facilities, comply with all applicable local, state and federal laws.

28.    Commissioner Marshall, who upon information and belief resides in Wood County, West Virginia, is sued in his individual and official capacity.

29.    Commissioner Jividen, who upon information and belief resides in Ohio County, West Virginia, is sued in her individual capacity.

30.    Defendant The County Commission of McDowell County ("McDowell County") is the duly elected political body of McDowell County, a political subdivision established under the laws of West Virginia and located in McDowell County, West Virginia.

31.    Defendant McDowell County owns and operates McDowell County Corrections and Stevens Correctional Center (collectively "Facilities").

32.    Defendant McDowell County contracts with the ("WVDCOR") to house minimum to medium class state inmates in the Facilities. See W. Va. Code § 15A-3-12(b).

33.    Cecil Patterson, Michael Broos, and DeWayne Dodson (collectively "County Commissioner Defendants") were at all times hereto the elected officials charged with oversight of the McDowell County Commission and the carrying out of all statutory, regulatory, and other non-delegable duties of the McDowell County Commission.

34.    County Commissioners Defendants had final authority to establish and enforce policy with respect to the Facilities in their jurisdiction.

35.    At all times relevant hereto, County Commissioner Defendants were under the color of law and with the scope of their duties as County Commissioners.

36.    County Commissioner Defendants, who upon information and belief resides in McDowell County, West Virginia, are sued in their individual and official capacities.

37.    Defendant Charles Gore ("Superintendent C. Gore") was at all times relevant hereto an employee and/or agent of McDowell County and/or WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the superintendent of the Facilities. Superintendent C. Gore was acting in his capacity as Superintendent from 2022 to present.

38.    Defendant Randall Mutter ("Former Superintendent Mutter") was at all times relevant hereto an employee of McDowell County and/or WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the superintendent of the Facilities. Former Superintendent Mutter was acting as in his capacity as Superintendent from 2018 through 2022.

39.    Superintendent C. Gore and Former Superintendent Mutter are collectively referred to as "McDowell County Superintendents."

40.    McDowell County Superintendents are tasked by law with the care and custody of all detainees and prisoners incarcerated at the Facilities. McDowell County Superintendents are vested with authority and responsibility for the safe staffing, administration, operation, and control of the Facilities, including, but not limited to, the oversight of all the Facilities' employees, and the authority to promulgate, amend, and implement all policies and procedures within the Facilities

to ensure constitutional confinement and treatment of all individuals incarcerated therein. See W. Va. Code § 15A-3-5.

41.     Among other things, McDowell County Superintendents are charged with ensuring that inmates housed in the Facilities received constitutionally adequate medical care and medical care that met the standard of care while incarcerated.

42.     Among other things, McDowell County Superintendents are charged with ensuring that inmates housed in the Facilities were adequately protected.

43.     Among other things, McDowell County Superintendents are charged with ensuring that inmates housed in the Facilities were subject to humane conditions of confinement.

44.     Likewise, McDowell County Superintendents are tasked by law with ensuring that the Facilities comply with all applicable local, state and federal laws.

45.     Superintendent C. Gore, who upon information and belief resides in McDowell County, West Virginia, is sued in his individual capacity.

46.     Former Superintendent Mutter, who upon information and belief resides in McDowell County, West Virginia, is sued in his individual capacity.

47.     At all times relevant herein, the Facilities were overcrowded, understaffed, and subject to deterioration from deferred maintenance.

48.      Wexford Health Sources, Inc., is a Florida corporation with its principal place of business in Pittsburgh, Pennsylvania.

49.     From March of 2015 to present Wexford has been the healthcare provider contracted with the WVDOCR for the provision of medical care at the Facilities.

50.     Daniel Conn is the President, CEO, Chairman, and Assistant Secretary of Wexford.

51.    Elaine Gedman is the Executive Vice President, Chief Administrative Officer, and Assistant Secretary of Wexford.

52.    John Froelich is the Senior Vice President, CFO, and Assistant Secretary of Wexford.

53.    Defendants Stone, Conn, Gedman, and Froelich collectively maintained decision-making authority over policies, actions, and inactions of Wexford as set forth herein.

54.    In their respective roles outlined herein, Defendants Stone, Conn, Gedman, and Froelich were responsible for the implementation of and adherence to policies intended to provide constitutionally adequate healthcare and healthcare that met the applicable standard(s) of care to inmates at the Facilities.

55.    In their respective roles outlined herein, Defendants Stone, Conn, Gedman, and Froelich were responsible for providing constitutionally adequate healthcare and healthcare that met the applicable standard of care to inmates at the Facilities. and pretrial detainees at Southern Regional Jail that met the applicable standard(s) of care.

56.    Defendants John/Jane Doe Wexford Employees were at all times relevant hereto medical providers employed or contracted by Wexford to provide medical services to inmates at the Facilities.

57.    These medical services were required to be constitutionally adequate and meet the applicable standard(s) of care.

58.    Defendants John/Jane Doe, Nos. 1-10 are employees, agents and/or servants of the County Commission and/or WVDOCR and were at all times acting with the scope of their employment and under the color of law.

59.    Defendants John/Jane Doe, Nos. 1-10 are sued in their individual capacities.

60.     WVDCOR Commissioners, the County Commission, County Commissioners Defendants, and McDowell County Superintendents are sued up to the limits of the insurance policies that provide liability coverage for their actions and omissions, or as otherwise permitted by law.

61.     Defendant Aramark Correctional Services, LLC ("Aramark") is a foreign limited liability company registered to do business in the state of West Virginia. Aramark's principal office is located in Philadelphia, Pennsylvania.

62.     Aramark purports to be "breaking the cycle of recidivism by positively impacting the lives of the individuals we serve in our correctional facilities through food, training, and jobs."[1]

63.     During all times relevant herein, Aramark contracted with WVDOCR to provide food services and employment for inmates at the Facilities.

64.     Aramark is required to provide constitutionally adequate nutrition to the inmates at the Facilities.

65.     Defendants John/Jane Doe Aramark Employees are yet to be identified current and former employees of Aramark who worked, or are still working, at the Facilities.

66.     Based upon information and belief, Aramark employees at the Facilities have been instructed by Aramark management to cut or lessen food portions provided to inmates.

67.     As a result of this cost-saving practice, inmates at the Facilities are regularly not given adequate nutrition.

68.     As a result of this cost-saving practice, inmates at the Facilities are regularly not given the standard recommend daily caloric intake for adults.

---

[1] https://www.aramark.com/industries/business-and-government/corrections (accessed February 25, 2025).

69.     Defendant Union Supply Group, Inc. ("Union Supply") is a foreign corporation registered to do business in the state of West Virginia. Union Supply's principal office is located in Dallas, Texas.

70.     During all times relevant herein, Union Supply provided commissary services to inmates at the Facilities.

71.     Union Supply purports to be "the most innovative and price sensitive supplier of commissary goods and services."[2]

72.     Union Supply provides commissary services that are extremely overpriced and Union Supply provides poor quality products to the inmates.

73.     Defendants John/Jane Doe Union Supply Group, Inc. Employees are yet to be identified current and former employees of Aramark who worked, or are still working, at the Facilities

74.     In June of 2022, Defendant Aramark acquired Defendant Union Supply.

## FACTS

75.      Plaintiffs incorporate herein by reference all preceding Paragraphs of their Complaint as if set forth fully herein verbatim.

76.     Jails and their contractors are not permitted to act with deliberate indifference toward the health and safety of inmates. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016).

77.     Defendants have a duty "[t]o establish a just, humane, and efficient corrections program." See *W.Va. Code* § 15A-3-1(b)(4).

---

[2] https://www.unionsupply.com/ (accessed February 27, 2025).

78.    A humane corrections program is one that provides adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Syl. Pt. 2, *Crain v. Bordernkircher*, 178 W.Va. 338, 342 S.E.2d 422 (1986).

### Wexford Health Sources, Inc.

79.    Under the Eighth and Fourteenth Amendments to the United States Constitution, jail officials have a duty to provide inmates with adequate medical care. See *Scinto v. Stansberry*, th 841 F.3d 219, 225 (4th Cir. 2016); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1282-1284 (S.D.W.Va. 1981)..

80.    "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually product physical 'torture or a lingering death.' …[i]n less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency…" *Dawson*, 527 F. Supp. At 1306 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-105, 97 S.Ct. 285, 190-291 (1976)).

81.    "[T]he deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id*.

82.    From at least July of 2018, to present, WVDOCR contracts with Wexford for the provision of medical services to inmates at the Facilities.

83.    As the contracted medical provider for the Facilities, Wexford is obligated to ensure inmates' constitutional rights to medical care were met.

84.    As the contracted medical provider for the Facilities, Wexford is obligated to ensure inmates' received medical care that met the applicable standard of care

85.     Wexford is required to provide inmates "with unimpeded access to a continuum of healthcare services so that their healthcare needs, including prevention and health education, are met in a timely and efficient manner." WVDCR Policy Directive No. 410.00(I)(b).

86.      It is the responsibility of Wexford to eliminate barriers to access to healthcare to provide constitutionally adequate healthcare and healthcare that meets the standard of care.

87.     Unreasonable barriers to healthcare include medical personnel understaffing.

88.     Barriers to care include shortages in correctional staff.

89.     Overcrowding is a barrier to access to care.

90.     Regardless of significant increases in inmate population, Wexford had a duty to provide adequate medical services.

91.     Wexford had a duty to provide necessary healthcare to preserve the health and safety of inmates.

92.     The provision of necessary healthcare ensures inmates do not face serious injury or death.

93.     Wexford had a duty to provide adequate healthcare services to their patients.

94.     The duty exists regardless of whether the Facilities have adequate correctional staff.

95.     That duty exists regardless of the number of medical staff and/or medical providers Wexford elects to have.

96.     Wexford has a duty to provide timely medical care.

97.     Wexford has the duty to provide timely medical care regardless of security staffing, medical staffing, and jail population.

98.     Access to care requires that patients be seen in a timely manner, by qualified healthcare professionals. NCCHC Standard J-A-01

99.     Access to care means that there is an adequate number of medical staff in each profession at each facility. NCCHC Standard J-A-01.

100.    Access to care requires receipt of care that is ordered. NCCHC Standard J-A-01.

101.    Wexford routinely and as a matter of course failed to meet its contractual and other obligations including but not limited to: operating with chronic understaffing and overdue tasks, ignoring sick calls, and ignoring inmates' need for transfer to outside medical facilities.

102.    The medical treatment Wexford has administered has failed in every regard to satisfy the requirements of the Constitution and the standard of care.

## CLASS ACTION CRITERIA

103.     Inmates housed at The Facilities annually during the applicable time period.

104.    Medical Defendants were responsible for the provision of healthcare to all inmates during the applicable time period. Further, the members of the class are fluid, as new individual members are incarcerated at The Facilities daily, and many members are subsequently transferred to another facility or released.

105.    Accordingly, the class is so numerous that joinder of all members is impracticable.

106.    The questions of law and fact set forth herein are common for all putative class members.

107.    Common questions of fact include whether inmates at The Facilities received adequate nutrition, basic necessities, and constitutionally adequate medical care which met the applicable standard of care.

108.    Common questions of law include whether Defendants acted with deliberate indifference to the health and safety of inmates and/or breached a duty of care to inmates.

109.    The claims of the class representatives, outlined herein below, are typical of the claims of all putative class members.

110.    The representative parties named herein below will fairly and adequately protect the interests of the class.

111.    There are no antagonist interests between Plaintiffs and the members of the putative class, and the relief sought by the named Plaintiffs will benefit the class generally.

112.    Plaintiffs' counsel has substantial experience in class litigation, representing inmates in civil actions, and representing low-income West Virginians in civil actions.

113.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final relief with respect to the class as a whole an appropriate remedy.

114.    This class may be certified based on discrete sub-issues or bifurcated on the issues of Defendants' liability and individual class member damages. Fed. R. Civ. P., Rule 23(c)(4).

115.    This class may be certified based on discrete sub-issues or bifurcated on the issues of Defendants' liability and individual class member damages. Fed. R. Civ. P., Rule 23(c)(4).

## CLASS ALLEGATIONS

116.    Plaintiffs incorporate all preceding allegations as if set forth more fully herein verbatim.

117.    Plaintiffs propose a class definition of:

> Generally, all current and former inmates at McDowell County Corrections and Stevens Correctional Center from July 1, 2018 to present.

## CLASS REPRESENTATIVE ALLEGATIONS

### A. Harold Pritchard

118.    Plaintiff Harold Pritchard was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately October 6, 2017.

119.    Plaintiff Pritchard purports to represent a class of similarly situated inmates at The Facilities.

120.    During his time at The Facilities, Plaintiff Pritchard was given inadequate portions of food.

121.    During his time at The Facilities, Plaintiff Pritchard was given rotten and undercooked food.

122.    During his time at The Facilities, Plaintiff Pritchard had difficulty receiving basic hygiene items.

123.    During his time at The Facilities, Plaintiff Pritchard rarely received recreation time.

124.    During his time at The Facilities, Plaintiff experienced mold present in the facility.

125.    During his time at The Facilities, Plaintiff Pritchard did not have hot water for six months.

126.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

127.    Plaintiff Pritchard had a heart condition that was left untreated for approximately nine months by Medical Defendants, despite filling out multiple sick call requests.

128.    Plaintiff Pritchard also experienced prostate issues, which went untreated for approximately fifteen months by Medical Defendants, despite filling out multiple sick call requests.

129.     Additionally, Plaintiff Pritchard experienced issues with blindness in his left eye, which went untreated for approximately twelve months by Medical Defendants, despite filling out multiple sick call requests.

130.     During his time as a patient of Wexford, Plaintiff Pritchard never received prompt and adequate medical care.

131.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff Pritchard suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

132.     As a direct and proximate result of Defendants' actions and inactions, Plaintiffs (and all similarly situated inmates and former inmates) suffered physical harm and will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; the physical effects of loss of sleep and/or exhaustion; nausea and/or vomiting; the physical effects of dehydration and/or malnutrition; the physical effects of exposure to black mold; the physical effects of inadequate lighting; the physical effects of inadequate recreation; the physical effect of living in unsanitary conditions; the development of associated medical conditions; and, a substantial risk of serious harm.

**B.  Owen Davis**

133.     Plaintiff Owen Davis was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately April 5, 2017.

134.     Plaintiff Davis purports to represent a class of similarly situated inmates at The Facilities.

135.     During his time at The Facilities, Plaintiff Davis was given inadequate portions of food.

136.    During his time at The Facilities, Plaintiff Davis was given rotten and undercooked food, including chicken by-product.

137.    During his time at The Facilities, Plaintiff Davis was had difficulty receiving basic hygiene items.

138.    During his time at The Facilities, Plaintiff Davis rarely received recreation time.

139.    During his time at The Facilities, Plaintiff Davis experienced sewage water dripping in food in the kitchen and multiple ceiling leaks.

140.    During his time at The Facilities, Plaintiff Davis experienced the effects of understaffing of correctional officers in the facility.

141.    During his time at The Facilities, Plaintiff Davis received unclean clothing and underwear.

142.    During his time at The Facilities, Plaintiff Davis rarely received answers to grievances filed or found to almost never receive a satisfactory solution to his grievance.

143.    During his time at The Facilities, Plaintiff Davis experienced mold present in the facility.

144.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

145.    During his time as a patient of Wexford, Plaintiff Davis never received prompt and adequate medical care after filling out multiple sick call requests.

146.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff Davis suffered malnutrition, emotional distress, mental anguish,  physical pain and suffering, and increased risk of harm.

C. <u>Rylan Johnson</u>

147.    Plaintiff Rylan Johnson was an inmate during the time periods identified herein, specifically becoming incarcerated on approximately February 15, 2022.

148.    Plaintiff Johnson purports to represent a class of similarly situated inmates at The Facilities.

149.    During his time at The Facilities, Plaintiff Johnson was given inadequate portions of food.

150.    During his time at The Facilities, Plaintiff Johnson experienced issues with hot/cold water or having no water at all.

151.    During his time at The Facilities, Plaintiff Johnson had difficulty receiving basic hygiene items.

152.    During his time at The Facilities, Plaintiff Johnson rarely received recreation time.

153.    During his time at The Facilities, Plaintiff Johnson had to sleep on the floor, with no boat provided to sleep in.

154.    During his time at The Facilities, Plaintiff Johnson experienced mold present in the facility.

155.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

156.    During his time as a patient of Wexford, Plaintiff Johnson never received prompt and adequate medical care after filling out multiple sick call requests.

157.    Plaintiff Johnson suffers from extremely high enzyme levels due to Hepatitis C, yet was denied multiple requests for medical attention.

158.    Plaintiff Johnson did not receive dental treatment, despite multiple requests for two painful teeth needing dental work.

159.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff Johnson suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

**D.  Thomas Williams**

160.    Plaintiff Thomas Williams was an inmate during the time periods identified herein, specifically becoming incarcerated in 2013.

161.    Plaintiff Williams purports to represent a class of similarly situated inmates at The Facilities.

162.    During his time at The Facilities, Plaintiff Williams was given inadequate portions of food.

163.    During his time at The Facilities, Plaintiff Williams experienced mold present in the facility.

164.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

165.    During his time as a patient of Wexford, Plaintiff Williams never received prompt and adequate medical care after filling out multiple sick call requests.

166.    Plaintiff Johnson required surgery for a hernia, but was told by Medical Defendants that he would only be observed.

167.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff Williams suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

**E.  Anthony Paul Jacob Weingard**

168.     Plaintiff Anthony Paul Jacob Weingard was an inmate during the time periods identified herein, specifically becoming incarcerated in 2013.

169.    Plaintiff Weingard purports to represent a class of similarly situated inmates at The Facilities.

170.    During his time at The Facilities, Plaintiff Weingard was given inadequate portions of food and undercooked food.

171.    During his time at The Facilities, Plaintiff Weingard experienced mold present in the facility.

172.    During his time at The Facilities, Plaintiff Weingard had difficulty receiving basic hygiene items.

173.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

174.    During his time as a patient of Wexford, Plaintiff Weingard required dental treatment and was told that there was no dentist at the facility, leaving his dental needs being unmet.

175.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff Weingard suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

G.  **Sean Thacker**

176.     Plaintiff Sean Thacker was an inmate during the time periods identified herein, specifically becoming incarcerated approximately August 2018.

177.    Plaintiff Thacker purports to represent a class of similarly situated inmates at The Facilities.

178.    During his time at The Facilities, Plaintiff Thacker was given inadequate portions of food.

179.    During his time at The Facilities, Plaintiff Thacker experienced mold present in the facility.

180.    During his time at The Facilities, Plaintiff Thacker had difficulty receiving basic hygiene items.

181.    During his time at The Facilities, Plaintiff Thacker was assaulted due to the lack of correctional staff to keep him safe.

182.    During his time at The Facilities, Plaintiff Thacker experienced severe understaffing of correctional officers, and had visitations with family cancelled for lack of officers to supervise.

183.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

184.    During his time as a patient of Wexford, Plaintiff Thacker required a CT scan and did not receive it for at least a year and a half, despite making sick call requests.

185.    During his time at The Facilities, Plaintiff Thacker required an elbow brace, and despite making multiple requests, he did not receive one for at least four months.

186.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff Thacker suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

**H.  Rush Bryant Dials**

187.      Plaintiff Rush Bryant Dials was an inmate during the time periods identified herein, specifically becoming incarcerated approximately June 14, 2020.

188.     Plaintiff Dials purports to represent a class of similarly situated inmates at The Facilities.

189.     During his time at The Facilities, Plaintiff Dials was given inadequate portions of food.

190.     During his time at The Facilities, Plaintiff Dials was given raw and undercooked food.

191.     During his time at The Facilities, Plaintiff Dials experienced mold present in the facility.

192.     During his time at The Facilities, Plaintiff Dials was assaulted due to lack of correctional officers staffing the facility.

193.     During his time at The Facilities, Plaintiff Dials had difficulty receiving basic hygiene items.

194.     No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

195.     During his time as a patient of Wexford, Plaintiff Dials required treatment for seizures and did not receive adequate medical care.

196.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff Dials suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

**I. Joseph Whitlow**

197.    Plaintiff Joseph Whitlow was an inmate during the time periods identified herein, specifically becoming incarcerated approximately February 1, 2020 to March 1, 2020 and May 24, 2022 to June 28, 2022.

198.    Plaintiff Whitlow purports to represent a class of similarly situated inmates at The Facilities.

199.    During his time at The Facilities, Plaintiff Whitlow was given inadequate portions of food.

200.    During his time at The Facilities, Plaintiff Whitlow experienced mold present in the facility.

201.    During his time at The Facilities, Plaintiff Whitlow was assaulted due to lack of correctional officers staffing the facility.

202.    During his time at The Facilities, Plaintiff Whitlow had difficulty receiving basic hygiene items.

203.    No McDowell County Commission Defendant made any effort to ensure that McDowell County inmates received adequate and sufficient nutrition and hygiene items, as required by law.

204.    During his time as a patient of Wexford, Plaintiff Whitlow requested treatment for issues with his feet and specifically, due to pain from ingrown toenails. Plaintiff Whitlow was denied treatment.

205.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff Whitlow suffered malnutrition, emotional distress, mental anguish, physical pain and suffering, and increased risk of harm.

206.    As a direct and proximate result of Defendants' actions and inactions, Plaintiffs (and all similarly situated inmates and former inmates) suffered physical harm and will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; the physical effects of loss of sleep and/or exhaustion; nausea and/or vomiting; the physical effects of dehydration and/or malnutrition; the physical effects of exposure to black mold; the physical effects of inadequate lighting; the physical effects of inadequate recreation; the physical effect of living in unsanitary conditions; the development of associated medical conditions; and, a substantial risk of serious harm.

## CAUSES OF ACTION

### Count I - 42 U.S.C. § 1983 – Eighth Amendment Violations (Conditions of Confinement and Deliberate Indifference to Serious Medical Needs)

207.    Plaintiffs incorporate herein by reference the preceding paragraphs of their Complaint as if set forth fully herein verbatim.

208.    Defendants, while acting under the color of law and within the scope of their employment, violated the Eighth Amendment right of convicted inmates to be free from cruel and unusual punishment.

209.    The actions and inactions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Plaintiffs, and all similarly situated former inmates, under the Eighth Amendment to the United States Constitution by depriving them of basic human necessities inclusive of adequate and sufficient nutrition, adequate hygiene items, adequate and sufficient bedding, and adequate medical care.

210.    McDowell County and County Commissioner Defendants adhered to policies  that they would not remedy the unconstitutional conditions of confinement and inadequate medical care, including, but not limited to, ensuring that inmates received adequate and sufficient nutrition, hygiene items, and adequate and sufficient bedding; received adequate healthcare and healthcare that met the standard of care; and, failing to maintain the Facilities to provide a safe and sanitary environment.

211.     The County Commissioner Defendants had final policymaking authority over the County Commissions and elected not to adhere to the County Commission's obligations to ensure that inmates received adequate and sufficient nutrition, hygiene items, and adequate and sufficient bedding; received adequate healthcare and healthcare that met the standard of care; and, failing to maintain the Facilities to provide a safe and sanitary environment.

212.    McDowell County and County Commissioner Defendants' omissions set forth herein manifest deliberate indifference to the rights of inmates at the Facilities.

213.    McDowell County and County Commissioner Defendants' conduct was not reasonably related to any legitimate, non-punitive governmental or penological objective.

214.    Plaintiffs specifically set forth the inadequate adequate and sufficient nutrition, hygiene items, and adequate and sufficient bedding; received adequate healthcare and healthcare that met the standard of care; and, failing to maintain the Facilities to provide a safe and sanitary environment.

215.     McDowell County and County Commissioner Defendants' omissions set forth herein resulted in harm to Plaintiffs and similarly situated inmates by directly and proximately causing malnutrition, emotional distress, and physical pain and suffering as enumerated herein above.

216.    Wexford, through its employees listed herein, deprived Plaintiffs and others similarly situated of their Eighth Amendment rights by and through its omissions that manifest deliberate indifference so as to constitute an actionable policy or custom.

217.    Wexford deprived Plaintiffs and others similarly situated of their Eighth Amendment Rights through the decisions of Defendants Conn, Gedman, and Froelich, who had final policymaking authority, so as to constitute an actionable policy or custom.

218.    Wexford exercised a persistent and widespread custom of remaining understaffed, causing and permitting chronic and excessive overdue tasks and sick calls to accumulate; causing and permitting excessive delays of medical care; causing and permitting systemic failures to adhere to NCCHC standards, Wexford policies and procedures; WVDOCR policies, and the standard of care; and refusing to send patients for outside care, so as to constitute an actionable policy or custom that deprived Plaintiffs and others similarly situated of their Eighth Amendment Rights.

219.    Defendants Conn, Gedman, and Froelich, were responsible for oversight and management of Wexford services at the Facilities.

220.    Defendants Conn, Gedman, and Froelich have possessed actual or constructive knowledge for many years regarding medical understaffing and chronic and excessive overdue tasks and nurse sick calls.

221.    Each of the foregoing individuals, including those with final policymaking authority, committed acts and decided to make glaring omissions – such as refusal to fully staff medical or to take measures to address chronic and excessive overdue tasks and nurse sick calls – so as to manifest deliberate indifference, constitute a custom or usage, and rise to the level of an actionable policy or custom.

222.    Wexford's policy or custom of failing to enforce NCCHC standards, its own policies and procedures, WVDOCR policies, and the standard of care, as well as its failure to prevent short staffing and excessive overdue tasks resulted in each of the Named Plaintiffs and other similarly situated, not receiving constitutionally required healthcare and not receiving healthcare that met the applicable standard of care.

223.    These policies and customs directly and proximately resulted in Named Plaintiffs and others similarly situated, suffering emotional distress and increased risk of harm.

224.    Defendants John and Jane Doe Wexford Employees and/or contractors involved in the care of one or more of the Named Plaintiffs.

225.    Wexford's policies or customs of chronic understaffing, overdue tasks and nurse sick calls, and failure to adhere to constitutional standards, policies and the standard of care resulted in the inadequate treatment of each of the Named Plaintiffs detailed herein.

226.    Wexford and John and Jane Doe Wexford Employees and/or contractors' conduct was not reasonably related to any legitimate, non-punitive governmental or penological objective.

227.    Wexford and John and Jane Doe Wexford Employees and/or contractors' actions shock the conscience.

228.    Wexford and John and Jane Doe Wexford Employees and/or contractors' actions were reprehensible, willful, wanton, malicious, and in blatant disregard for the rights owed to Plaintiffs, thereby justifying an award of punitive damages.

229.    Aramark adhered to policies  that they would not remedy the unconstitutional conditions of confinement and inadequate and insufficient nutrition

230.    Aramark had final policymaking authority over the nutrition and hydration it provided and elected not to adhere to the obligations to ensure that inmates received adequate and sufficient nutrition and hydration.

231.    Aramark's omissions set forth herein manifest deliberate indifference to the rights of inmates at the Facilities.

232.    Aramark's conduct was not reasonably related to any legitimate, non-punitive governmental or penological objective.

233.    Plaintiffs specifically set forth the inadequate and insufficient nutrition and hydration at the Facilities to provide a safe and sanitary environment.

234.    Aramark's omissions set forth herein resulted in harm to Plaintiffs and similarly situated inmates by directly and proximately causing malnutrition, emotional distress, and physical pain and suffering as enumerated herein above.

235.    As a direct and proximate result of each and every Defendants' actions and inactions, Plaintiffs (and all similarly situated inmates and former inmates) suffered physical harm and will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; the physical effects of loss of sleep and/or exhaustion; nausea and/or vomiting; the physical effects of dehydration and/or malnutrition; the physical effects of exposure to black mold; the physical effects of inadequate lighting; the physical effects of inadequate recreation; the physical effect of living in unsanitary conditions; the development of associated medical conditions; and, a substantial risk of serious harm.

## Count II - Conspiracy to Commit Eighth Amendment Violations and Common Law Civil Conspiracy

236.    Plaintiffs incorporate herein by reference all preceding paragraphs of their Third Amended Complaint as if set forth more fully herein verbatim.

237.    Defendants, while acting under color of law and within the scope of their employment, acted jointly and in concert to deprive Plaintiffs and others similarly situated of their Eighth Amendment right to be free from cruel and unusual punishment.

238.    Defendants committed overt acts to accomplish the constitutional deprivations and injuries described herein.

239.    County Commissioner Defendants purposefully and with intent failed to carry out their legal obligations under the constitutional and other laws.

240.    By so doing, County Commissioner Defendants conspired with former WVDOCR Defendants to accomplish constitutional deprivations by depriving inmates of adequate and sufficient bedding; received adequate healthcare and healthcare that met the standard of care; and, failing to maintain the Facilities to provide a safe and sanitary environment.

241.    WVDOCR Commissioners were aware of the inadequacies at the Facilities and failed to correct the inadequacies or enforce contractual obligations.

242.    Accordingly, County Commissioner Defendants and WVDOCR Commissioners conspired to deprive inmates of adequate and sufficient bedding; received adequate healthcare and healthcare that met the standard of care; and, failing to maintain the Facilities to provide a safe and sanitary environment.

243.    Wexford Defendants conspired to continue to provide inadequate healthcare to inmates at the Facilities in order to cut costs and avoid seeking additional monies from County Commissioner Defendants and/or WVDOCR Defendants.

244.    County Commissioner Defendants and WVDOCR Commissioners were aware of the failure of Wexford and its employees and contractors to meet constitutional standards and meet

the applicable standards of care, yet failed to enforce the contract or enforce the constitutionally required standards.

245.    Accordingly, County Commissioner Defendants, WVDOCR Commissioners, and Wexford Defendants conspired to deprive inmates of adequate healthcare and healthcare that met the standard of care.

246.     Plaintiffs, and other similarly situated, suffered damages as set forth more fully herein as a result of these constitutional deprivations.

247.    Defendants' actions shock the conscience.

248.    Wexford Defendants' actions were reprehensible, willful, wanton, malicious, and in blatant disregard for the rights owed to Plaintiffs, thereby justifying an award of punitive damages.

## Count III – Medical Negligence under the West Virginia Medical Professional Liability Act (Medical Defendants)

249.    Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth more fully herein verbatim.

250.    At all times relevant hereto, Wexford Defendants owed Plaintiffs (and all similarly situated inmates and former inmates) a duty of care under West Virginia's Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, et seq. as the applicable health care providers for Plaintiffs and all similarly situated individuals.

251.    Wexford Defendants contract with the State of West Virginia  to provide inmates and pretrial detainees with constitutionally adequate healthcare which meets the applicable standard of care.

252.    Each and every inmate that becomes incarcerated at the Facilities is evaluated and treated by the medical provider contracting at the Facilities.

253.    Wexford Defendants owe each and every patient at the Facilities a duty of care as their contracted medical provider.

254.    Wexford Defendants deviated from the standard of care, as set forth more fully herein, resulting in deliberate indifference to the serious medical needs of Plaintiffs and all others similarly situated and directly and proximately causing harm to Plaintiffs and others similarly situated.

255.    Wexford Defendants failed to meet the applicable standard of care for a correctional healthcare provider by failing to maintain adequate staffing; creating and permitting excessive and chronic overdue tasks and nurse sick call lists; failing to adhere to NCCHC standards, their own standards, and WVDOCR standards; and failing to ensure access to care and removal of barriers to care. These breaches of the standard of care are set forth more fully herein above.

256.    Wexford Defendants and its employees listed herein above deviated from the standard of care owed to Named Plaintiffs and those similarly situated by failing to ensure that these inmates received proper and adequate health care.

257.    This deviation from the standard of care directly and proximately resulted in Named Plaintiffs and others similarly situated, suffering emotional distress and increased risk of harm.

258.    By their actions and inactions set forth herein, Wexford Defendants failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent correctional healthcare provider.

259.    Defendants Wexford and their employees listed herein above, with a conscious disregard for the safety of others, negligently, carelessly, recklessly, incompetently, willfully,

and wantonly deviated from the appropriate standards of care and failed to provide the

appropriate treatment for Plaintiffs and all others similarly situated, thereby entitling Plaintiffs to

punitive damages.

260.    As a direct and proximate result of each and every Defendants' actions and

inactions, Plaintiffs (and all similarly situated inmates and former inmates) suffered physical

harm and will seek compensatory and nominal damages for, inter alia, physical pain and

discomfort; and, a substantial risk of serious harm.

**Count IV – Violation of Due Process**
**(Union Supply)**

261.    Plaintiffs incorporate herein by reference all preceding paragraphs of the

Complaint as if set forth more fully herein verbatim.

262.    Defendant Union Supply provides commissary services that are excessively

overpriced compared to the same products available outside the Facilities.

263.    Plaintiffs and those similarly situated cannot obtain the products outside of the

Facilities.

264.    Union Supply's products are of poor quality.

265.    The excessive overpricing and/or poor quality violated Plaintiffs' due process

rights.

266.    As a direct and proximate result of Union Supply's actions, Plaintiffs suffered

monetary damages in the surcharge and poor quality of the products provided by Union Supply.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for relief including, but not expressly limited to:

1. Compensatory damages;

2. Damages for pain, suffering, emotional distress, mental anguish, and increased risk of

harm;

3. Nominal damages;

4. Statutory penalties;

5. Punitive damages;

6. Attorneys' costs and fees;

7. Declare that Defendants' actions and/or inactions, as described hereinabove, violate the

Eighth Amendment to the United States Constitution;

8. Enjoin Defendants from engaging in further unconstitutional practices, as described

hereinabove: and,

9. All such other and further relief as allowable by law.

Plaintiffs demand a jury trial.

**PLAINTIFFS**

**By Counsel**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB No. 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250

office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com